**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

        Plaintiff,

vs.                                            No. 19-CR-1091 MV

PETER GOMEZ, and
AMADEO SANCHEZ,

        Defendants.

**AMADEO SANCHEZ'S RESPONSE TO UNITED STATES' NOTICE OF INTENT
AND MOTION TO INTRODUCE CO-CONSPIRATOR
STATEMENTS PURSUANT TO FEDERAL RULE OF EVIDENCE 801(d)(2)(E)**

**COMES NOW** the Defendant, AMADEO SANCHEZ, by and through counsel of record, Ahmad Assed & Associates (Ahmad Assed, Esq., Richard J. Moran, Esq. & Britany Schaffer, Esq.) and hereby submits his Response to the *United States' Notice of Intent and Motion to Introduce Coconspirator Statements Pursuant to Federal Rule of Evidence 801(d)(2)(E)* [Doc. 51]. In response, Mr. Sanchez states:

**I.    Government's Notice and Motion to Introduce**

In its Notice and Motion, the Government seeks to introduce three differing sets of "co-conspirator" statements:

> "1. Statements by Gomez to the effect that he accepted the three guns identified above [within the preceding paragraph within the Government's motion] as "collateral" for drugs, and statements by Sanchez agreeing to hold the guns for Gomez. (hereinafter "Set 1"),
>
> 2. Statements by Gomez, Sanchez, and D.S. in which they discussed various aspects of the drug operation at 10710 Calle de Celina. These statements include, for example, discussions of who would sell to various customers and when particular amounts of drugs had been procured. (hereinafter "Set 2"),
>
> 3. Text messages between D.S. and a customer arranging for the sale of drugs from 10710 Calle de Celina." Hereinafter "Set 3").

1

The Government states that they intend to elicit these statements through D.S., a member of the alleged conspiracy who previously pled guilty to a conspiracy charge involving the Defendants in a separate matter, and not through the testimony of a law enforcement agent. As the Court remarked during the Status Hearing on February 6, 2020, the United States' separate filing of D.S.'s case without indicating that the two cases were related failed to follow proper procedure and caused confusion to the Court and prejudice to the Defendants. Further, while the United States has produced some information from D.S.'s cell phone to the Defendants, that production was exceedingly limited and the failure to provide a full disclosure of the cell phone contents has limited Defendants' ability to develop any potential defenses and cross-examine the witness in violation of the Defendants' Confrontation Clause rights. Based on this position, while Defendant recognizes that D.S.'s testimony may satisfy the principles of *Crawford* under the Confrontation Clause, the issues of prejudice to the Defendants without the full benefit of the co-conspirator's exact statements and discovery related thereto, and the admissibility of each statement, remain before the Court.

As it relates to the Government's Notice and Motion, the Defendant asks the Court to reserve ruling on any pretrial determination of admissibility for non-verbal evidence, as the Government admits that "the bulk of her [D.S.'s] testimony will be based on her first-hand observations of activities that occurred in the house and therefore is not hearsay." *See* [Doc. 51 at 4]. While Defendant concedes that testimony about a witness's own observations is not hearsay, such observations remain subject to other Rules of Evidence and other constitutional considerations that should be made in the course of trial to determine on a case-by-case basis their admissibility.

## II. Co-conspirator Statements

Pursuant to Fed. R. Evid. 801(d)(2)(E), a statement is not considered hearsay if it is offered against a defendant and is made by a co-conspirator of the defendant during the course and in furtherance of the conspiracy. In admitting co-conspirator testimony under Rule 801(d)(2)(E), a district court must determine by a preponderance of the evidence that the statements fall within that definition. *Bourjaily v. United States*, 483 U.S. 171, 175 (1987). Rule 801(d)(2)(E) further states:

> A statement is not hearsay if ... [t]he statement is offered against a party and is ... a statement by a coconspirator of a party during the course and in furtherance of the conspiracy. The contents of the statement shall be considered but are not alone sufficient to establish ... the existence of the conspiracy and the participation therein of the declarant and the party against whom the statement is offered under subdivision (E).

The third requirement for Rule 801(d)(2)(E) admissibility has two parts. First, the statement must be made "during the course" of the conspiracy. Second, the statement must be made "in furtherance of the conspiracy." "A coconspirator statement is made 'during the course' of the conspiracy if it is made before the objectives of the conspiracy have either failed or been achieved." *United States v. Owens*, 70 F.3d 1118, 1126 (quoting *United States v. Perez*, 989 F.2d 1574, 1579 (10th Cir.1993) (en banc)). A statement is made "in furtherance of the conspiracy" if it is "intended to promote the conspiratorial objectives." *United States v. Reyes*, 798 F.2d 380, 384 (10th Cir.1986).

"When inquiring whether a statement was made in furtherance of a conspiracy, the court does not focus on its actual effect in advancing the goals of the conspiracy, but on the declarant's intent in making the statement." *United States v. Roberts*, 14 F.3d 502, 515 (10th Cir.1993) (citation omitted). The Tenth Circuit stated in *Perez*, "no talismanic formula exists for ascertaining whether a particular statement was intended by the declarant to further the

conspiracy ... [t]o the contrary, this determination must be made by examining the context in which the challenged statement was made." 989 F.2d at 1578–79. The Tenth Circuit "reject[s] the 'proposition that the statements must actually further the conspiracy to be admissible.' Rule 801(d)(2)(E) explicitly says statements need be 'in furtherance of the conspiracy' not that they 'further the conspiracy.' It is enough that they be intended to promote the conspiratorial objectives." *United States v. Mayes*, 917 F.2d 457, 464 (10th Cir.1990) (quoting *Reyes*, 798 F.2d at 384). Nevertheless, the court is mindful that the "in furtherance" test is narrowly applied and is "a limitation on the admissibility of co-conspirators' statements that is meant to be taken seriously." *Perez*, 989 F.2d at 1578 (quotation omitted); see *Roberts*, 14 F.3d at 514. Some examples of statements found to be "in furtherance of the conspiracy" include: 1) statements made to "prompt further action on the part of the conspirators;" 2) statements to "keep coconspirators abreast of an ongoing conspiracy's activities;" 3) statements that explain events of importance to the conspiracy; and 4) "statements of a co-conspirator identifying a fellow coconspirator." *See Roberts*, 14 F.3d at 515 (citations omitted); *United States v. Smith*, 833 F.2d 213, 219 (10th Cir.1987) (citations omitted). However, "*mere narratives between coconspirators or narrative declarations of past events are not in furtherance of a conspiracy.*" *Roberts*, 14 F.3d at 514–15 (emphasis added).

In the immediate matter, the government is seeking to introduce statements made by D.S. to investigators, which constitute a narrative declaration of past events. These statements do not constitute statements made "in furtherance of" a conspiracy, but rather a testimonial narrative of alleged personal observations made by an alleged co-conspirator. As such, these statements do not meet the hearsay exception provided by Rule 801(d)(2)(E). Regarding the remaining statements, as discussed below, because the exact nature of these statements cannot be

determined prior to trial, the Court should reserve making a decision as to their admissibility until trial. As a prime example, the Set 1 Statements regarding Sanchez's storage of the guns do not, by themselves, necessarily indicate any "furtherance" of the drug conspiracy. While there may be circumstantial evidence surrounding the statements, whose admissibility has not yet been determined, it is not clear by the United States' Motion that Mr. Sanchez's statements and storage of the guns were made "in furtherance" of the conspiracy. Therefore, those statements should not be admitted.

**III.  The Court's decision not to sever the case will prejudice the Defendants' respective abilities to present their defenses if the United States' Motion is granted.**

While the United States has described the alleged co-conspirator statements it seeks to introduce at trial in its Motion, these characterizations reflect the perspective of the United States and the actual substance of the statements cannot be assessed until made at trial. However, the Defendants' trial rights will be severely jeopardized at a joint trial should the Court blanketly admit the co-conspirator statements in the United States' Motion. As discussed above, the alleged co-conspirator whom the United States seeks to testify at trial was not indicted in this matter, and the United States gave no notice to the Court or co-defendants of the related matter in which she was indicted separately and alone. This tactic allowed for two of the co-conspirators to be tried jointly while giving impunity to the third co-conspirator from the same limitations of the joint defendants' respective defenses; namely, to protect their own rights against self-incrimination, and their Confrontational rights.

Indeed, the very concerns regarding the co-defendants' statements implicating one against the other are exacerbated by permitting the third co-conspirator's statements, elicited in the same manner as the statements made by Mr. Sanchez. On June 1, 2020, the Court denied Defendant Peter Gomez's Motion to Sever pursuant to *Bruton v. United States*, 391 U.S. 123

(1968) based on Mr. Sanchez's statements implicating Mr. Gomez. [Doc. 82]. The Court specifically determined that Defendant Sanchez's statements against Mr. Gomez would be redacted to satisfy any Confrontation Clause concerns, only permitting Mr. Sanchez's self-incriminating statements to be admitted. *Id.* at 3. But that same concern as to both Defendants' Confrontation rights is not satisfied in holding a joint trial with the third co-conspirator being permitted to make statements as to the other two, and forcing a situation where the two co-defendants' statements are introduced against each other such that their right to confrontation and their right to be free of self-incrimination become so intertwined as to compromise these specific trial rights in contradiction with *Bruton* and its progeny. *See Zafiro v. United States*, 506 U.S. 534, 539 (1993). In a case in which the co-defendants have markedly different degrees of culpability, and where one co-defendant's actions may erroneously implicate the other's, there is a high risk of prejudice. *Id.* ("We believe that, when defendants properly have been joined under Rule 8(b), a district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence. Such a risk might occur when evidence that the jury should not consider against a defendant and that would not be admissible if a defendant were tried alone is admitted against a codefendant. For example, evidence of a codefendant's wrongdoing in some circumstances erroneously could lead a jury to conclude that a defendant was guilty. When many defendants are tried together in a complex case and they have markedly different degrees of culpability, this risk of prejudice is heightened.").

     As such, admitting the co-conspirator's statements in a joint trial with the two remaining co-defendants will unduly prejudice them both by prohibiting them to fully exercise their rights to confrontation and from self-incrimination.

## IV. The text message evidence is not co-conspirator evidence and should not be admitted.

The United States seeks to introduce text message evidence from D.S.'s cell phone regarding drug transactions in which D.S. was involved. Specifically, the sole two text messages the United States seeks to introduce are characterized as follows:

- A customer texted D.S., "Hey girl I need the same thing on Wednesday I don't want you to make nothing I'll make sure we both make something."

- D.S. replied, "No worries . . . We can do it at 37." D.S. will testify that this indicated a price of $3,700 for a pound of methamphetamine.

[Doc. 51 at 7]. The United States conceded that "D.S. deleted the vast majority of these text messages" prior to its seizure. *Id*. In addition, while the United States provided a limited amount of information from the cellular phone in discovery to Defendants, without a full inspection of the cellular phone in question, Defendants cannot fully exercise their Confrontation rights by challenging other aspects of the information, including any exculpatory information.

Additionally, the information sought to be admitted does not implicate the Defendants themselves, and without more information indicating that these statements were made in furtherance of the same conspiracy, cannot be used against them under Rule 801(d)(2)(E).

## V. Conclusion

Because some of the statements the United States seeks to introduce may not qualify as co-conspirator statements under Federal Rule of Evidence 801(d)(2)(E), Defendant Amadeo Sanchez respectfully requests that the Court reserve its ruling on the United States' Motion. For all of the reasons stated above, the United States' Motion should be denied.

Wherefore, Mr. Sanchez requests the Court deny the *United States' Notice of Intent and Motion to Introduce Coconspirator Statements Pursuant to Federal Rule of Evidence 801(d)(2)(E)* (Doc. 51) that do not meet the hearsay exception under Federal Rule of

Criminal Procedure 801(d)(2)(E), and whose admissibility will be more properly determined at trial.

                                                     Respectfully Submitted,

                                                     */s/ Ahmad Assed*_____
                                                     Ahmad Assed, Esq.
                                                     Ahmad Assed & Associates
                                                     818 5th Street NW
                                                     Albuquerque, NM 87102
                                                     Phone: (505) 246-8373
                                                     Fax: (505 246-2930
                                                     *Attorney for Amadeo Sanchez*

I HEREBY CERTIFY that a true and correct
copy of the foregoing was delivered electronically
to parties of record, via the CM/ECF system,
on this 7th day of July, 2020.


*/s/Ahmad Assed*_____
Ahmad Assed, Esq.
Attorney at Law